UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL ENFINGER,

    Plaintiff,

v.                                                                      Case No. 8:14-cv-2113-T-30AEP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 139-43). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 73-74, 85-90, 92-94). Plaintiff then requested an administrative hearing (Tr. 95-96). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-54). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-29). Subsequently, Plaintiff requested review from the

Appeals Council, which the Appeals Council denied (Tr. 1-9). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

**B.     Factual Background**

Plaintiff, who was born in 1959, claimed disability beginning February 7, 2010 (Tr. 139). Plaintiff has a high school education (Tr. 158). Plaintiff's past relevant work experience included work as a driver (Tr. 36, 158, 191). Plaintiff alleged disability due to arthritis in the lower back and hips, bulging disc in the lower back, high blood pressure, cholesterol issues, and swollen ankles (Tr. 157).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since February 7, 2010, the alleged onset date (Tr. 15). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, obesity, obstructive sleep apnea, chronic obstructive pulmonary disease ("COPD"), hypertension, osteoarthritis, degenerative joint disease of the right foot, and diabetes (Tr. 15). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff was limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; frequently balancing, stooping, kneeling, crawling, and crouching; and should avoid concentrated exposure to irritants such as fumes, odors, dust, and gases (Tr. 18). In formulating

Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible (Tr. 19).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform any past relevant work (Tr. 23). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a molding machine tender, cashier II, and merchandise marker (Tr. 24, 51-52). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

### III.

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1527. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

Here, Plaintiff asserts that his impairments caused him significantly more limitations than those encompassed by the ALJ's RFC assessment.[1]  As noted, the ALJ concluded that Plaintiff retained a RFC to perform light work, except that Plaintiff was limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; frequently balancing, stooping, kneeling, crawling, and crouching; and should avoid concentrated exposure to irritants, such as fumes, odors, dust, and gases (Tr. 18).  Contrary to Plaintiff's assertions, the ALJ thoroughly and appropriately considered the evidence, including the medical opinions of record and Plaintiff's treatment notes, daily activities, and receipt of unemployment benefits, in reaching that conclusion (Tr. 18-23).

With respect to the opinion evidence, the ALJ afforded significant weight to the opinions of Dr. Bhupendra Gupta and Dr. Shakra Junejo (Tr. 23, 241-49, 250).  Dr. Gupta examined Plaintiff in May, 2011 (Tr. 241-49).  Dr. Gupta observed that Plaintiff exhibited full muscle strength in his upper and lower extremities, had no muscle or muscle group atrophy or wasting, had normal posture, sat with ease, stood with some difficulty, walked with some difficulty, could ambulate without an assistive device, had a steady and directed gait, could walk at a normal pace up to sixty feet without exertional dyspnea or chest pain, could dress and undress himself, could

---

[1] Plaintiff also contends that the ALJ failed to consider a medical record supporting the need for a walker. Contrary to Plaintiff's contention that the ALJ failed to consider the December 5, 2012 note from the Brandon Outreach Clinic, which indicated that Plaintiff received a walker from the clinic in 2011 (Tr. 524), the record makes clear that the ALJ explicitly addressed the note (Tr. 22). In rendering his decision, the ALJ appropriately afforded the note little weight since the record revealed no other medical treatment from the clinic and the note provided no supporting medical documentation (Tr. 22, 524). Furthermore, as discussed below, the other medical records failed to demonstrate that Plaintiff required the use of a walker or other assistive device to ambulate. As such, Plaintiff's contention lacks merit.

take footwear off, could open and close the door by turning knobs, and could get up on the exam table, lie down on the exam table, and get off the exam table but with some difficulty (Tr. 243-44). Dr. Gupta reported essentially normal findings, except that Plaintiff exhibited mild to moderate tenderness in his thoraco-lumbar spine and experienced some difficulty with straight-leg raising tests in both the supine and sitting positions (Tr. 243). After concluding his examination of Plaintiff, Dr. Gupta assessed Plaintiff as having lumbar spine pain probably due to osteoarthritis, possible sleep apnea, somewhat exaggerated pain behavior, hypertension, and history of chest pain on coughing (Tr. 244-45).

Dr. Junejo reviewed the evidence of record in June, 2011, and agreed with a prior RFC assessment completed in May, 2011 (Tr. 75-82, 250). The prior assessment indicated that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand and walk with normal breaks for a total of about six hours in an eight-hour workday, sit with normal breaks for about six hours in an eight-hour workday, and was unlimited in his ability to push or pull (Tr. 76). The prior assessment further indicated that Plaintiff experienced no manipulative, visual, or communicative limitations but experienced some postural and environmental limitations (Tr. 77-79). Specifically, the assessment indicated that Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds and that Plaintiff would need to avoid concentrated exposure to hazards, such as machinery or heights (Tr. 77, 79).

In rendering the RFC, the ALJ considered the opinion evidence of these two state agency medical consultants and properly afforded the opinions significant weight (Tr. 23). Indeed, in the Social Security disability evaluation process, state agency medical consultants are considered

experts. 20 C.F.R. § 404.1527(e)(2)(i). As discussed above, Dr. Gupta's findings and assessment, as well as Dr. Junejo's assessment, each indicated that Plaintiff's limitations did not prevent Plaintiff from performing the requirements of a reduced range of light work. Accordingly, the ALJ appropriately concluded that each opinion supported a finding that Plaintiff could perform a reduced range of light work (Tr. 23).

To further support the RFC finding, the ALJ discussed the medical evidence in the record, which similarly indicated that Plaintiff maintained the ability to perform a reduced range of light work (Tr. 19-23). As the ALJ succinctly summarized,

> In terms of the claimant's alleged impairments, the medical records show the claimant has some lumbar spine tenderness, pain on straight leg raising testing, moderate osteoarthritis with osteophyte formation per x-ray of lumbar spine and decreased disc space at L5-S1 indicative of degenerative disc disease, decreased lumbar range of motion, cervical disc disease, and right foot MRI evidence of degenerative joint disease. The medical records show diagnoses and ongoing medical treatment for diabetes, hypertension, right foot pain with radiographic evidence of degenerative joint disease, and COPD. Physical examinations are positive for obesity, some elevated blood pressure reading, some wheezes, and neck, back and right foot tenderness. The undersigned finds the type of impairments and objective medical findings support the assessed residual functional capacity. However, the overall objective medical evidence is inconsistent with disabling pain or functional limitations.

(Tr. 19). A review of the medical records supports the ALJ's findings in that regard. For example, the ALJ noted that Plaintiff sought emergency treatment at Brandon Regional Hospital ("BRH") secondary to an eye injury in March, 2010, or one month after the alleged disability onset (Tr. 20, 227-39). At that time, Plaintiff reported no musculoskeletal abnormalities and demonstrated a steady gait, demonstrated no abnormalities of his extremities, and ambulated independently (Tr. 232, 235). Plaintiff also denied current cardiac and sensory complaints and

8

demonstrated no abnormalities of the ears, nose, mouth, speech, neck, stomach, lungs, respiration, joints pulses, reflexes, sensation, or motor strength (Tr. 230-36). Plaintiff reported no unexplained alterations in his movement or mobility over the prior four weeks, no recent limitation as to his performance of his activities of daily living, and no recent alteration in his activities of daily living that required assistance (Tr. 236).

Hip X-rays taken in July, 2010, revealed degenerative changes of the lower lumbar spine and mild degenerative changes of the both hips but no acute bony abnormalities (Tr. 351). Plaintiff also underwent chest X-rays in November, 2010, which demonstrated no evidence of acute chest disease (Tr. 350). A pharmacological stress nuclear scan in March, 2011, revealed normal cardiac functioning (Tr. 369).

Following that, Plaintiff reported to the emergency room at BRH in July, 2011, after a fall (Tr. 264-78). At that time, Plaintiff complained of moderate back and neck pain (Tr. 265). Plaintiff exhibited moderate difficulty breathing but no numbness, dizziness, loss of vision, hearing loss, chest pain, weakness, headache, nausea, abdominal pain, vomiting, or any other system abnormalities (Tr. 265). Although Plaintiff exhibited bilateral foot swelling and vertebral point tenderness in his back, Plaintiff appeared in no acute distress, with a normal range of motion in his back, normal extremities upon inspection, no limping gait, an ability to bear weight, full orientation, and no motor or sensory deficits (Tr. 266). Plaintiff returned to the BRH emergency room in October, 2011, complaining of dyspnea (Tr. 280). Upon examination, Plaintiff exhibited none of the following: chest pain, respiratory distress, foot swelling, dizziness, tingling, motor deficit, calf tenderness, or lower extremity edema (Tr. 280-81). Furthermore, as the ALJ noted,

9

the CT scans, X-rays, and angiogram administered by BRH revealed no major abnormalities of his lumbar spine,[2] cervical spine, chest, and brain (Tr. 20, 264-88). MRI results from July, 2011, however, indicated that Plaintiff had (1) a small central disc protrusion at L3-4 causing mild to moderate spinal stenosis, (2) varying degrees of bulging disc at L1-2 through L5-S1 with mild degenerative disc disease at L4-5 and L5-S1, (3) foraminal narrowing at L2-3 through L5-S1, and (4) straightening of the normal lordosis suggested spasm or strain (Tr. 253).

Plaintiff presented to Suncoast Community Health Center ("SCHC") in January, 2012, with only a complaint of an itchy lump on his forearm (Tr. 323). At that time, Plaintiff demonstrated no wheezes, rhonchi, or rales and lungs clear to ascultation bilaterally as well as no clubbing, cyanosis, or edema in his extremities (Tr. 323). Following that, in March, 2012, Dr. Mohamad Saleh performed an EMG/NCV study after Plaintiff complained of burning, numbness, tingling, and pain in his legs and feet with continued low back pain (Tr. 255). Dr. Saleh determined that Plaintiff experienced chronic lumbosacral radiculopathic changes with multiple nerve root irritation but no evidence of any type of neuropathy or myopathy (Tr. 255). Dr. Saleh's treatment plan included only explanation and education, stretching exercise and relaxation with weight modification, and a trial of trigger point injections (Tr. 255, 257). Plaintiff followed up with Dr. Saleh in May, 2012, with continued complaints of low back pain shooting down the legs and hips along with spasm (Tr. 258). Dr. Saleh noted that there was no change in the examination

---

[2] For example, the X-rays of Plaintiff's lumbar spine taken in July, 2011, revealed degenerative disc disease in the diffuse lumbar spine with mild anterior osteophytic changes and mild bilateral lower lumbar spine facet joint degenerative changes but also indicated no fracture or subluxation of the lumbar spine, vertebral body heights within normal limits, and bone density within normal limits (Tr. 266-67).

from the prior assessments (Tr. 258). Dr. Saleh further noted that weight modification was essential to Plaintiff's care and physical therapy rehabilitation was required but that Plaintiff was "not much interested in pain management, injections, etc.," so Dr. Saleh noted that he would see Plaintiff on an as-needed basis (Tr. 258). Later that month, Plaintiff visited the SCHC seeking referrals for another opinion regarding his feet and back since Plaintiff stated that he continued to have pain in his feet bilaterally when weight bearing, his low back pain was becoming chronic, and he would occasionally experience pain radiating down his legs (Tr. 260). During the appointment, Brian Shaub, D.O., noted that Plaintiff appeared in no acute distress, demonstrated normal pulses bilaterally, and exhibited no clubbing, cyanosis, or edema in his extremities but exhibited some mild tenderness to the paraspinal musculature of his lumbar region and musculoskeletal bilateral heel tenderness (Tr. 260).

In early April, 2012, Plaintiff presented to SCHC for a follow-up appointment and reported some improvement with his breathing but set forth no complaints as to any musculoskeletal issues (Tr. 325-26). Notwithstanding, Plaintiff underwent a DEXA Scan, which revealed normal bone mineralization (Tr. 335). Plaintiff also underwent chest X-rays, which demonstrated no evidence of acute cardiopulmonary disease (Tr. 349). In late April, 2012, Plaintiff returned to SCHC complaining of pain in his right foot and difficulty walking and denied fall or injury as the cause (Tr. 327-28). Plaintiff demonstrated moderate tenderness on medial aspect of the heel and ventral aspect of the right foot, no swelling or joint deformity, range of motion within normal limits with pain, and an ability to ambulate with a limp favoring the right foot (Tr. 327). Plaintiff was ordered to start crutches and obtain X-rays (Tr. 327). X-rays

revealed degenerative changes of the right foot but indicated anatomic alignment, no fracture or dislocation, preserved joint spaces, no periarticular osteopenia or erosive change, and enthesopathy at the Achilles tendon insertion but no other osseous abnormality (Tr. 333). A couple days later, Plaintiff returned to the BRH emergency room complaining of moderate pain in the right foot and exhibiting mild tenderness in the right foot, but, upon examination, Plaintiff was in no acute distress and was intact distally with no erythema, swelling, laceration, abrasion, ecchymosis, foreign body, or deformity (Tr. 290-291). Plaintiff also exhibited normal range of motion in the lower extremities, normal reflexes, no limitation on weight bearing, no lower extremity edema, and no motor or sensory deficits (Tr. 291). X-rays of Plaintiff's right foot were negative, so Plaintiff was discharged home in good and improved condition (Tr. 291, 293).

Also during April, 2012, Plaintiff underwent a sleep study, given his prior sleep apnea diagnosis (Tr. 403-14). The study indicated that Plaintiff experienced severe obstructive sleep apnea with severe associated hypoxemia, sleep associated alveolar hypoventilation and hypoxemia secondary to the sleep apnea and COPD, lack of correction of significant sleep-disordered breathing with CPAP, correction of the obstructive sleep apnea and the alveolar hypoventilation and hypoxemia with a bi-level device, and periodic limb movements of sleep of unknown clinical significance (Tr. 403-14). It was recommended that Plaintiff lose weight, consider an otolaryngology consultation to rule out nasal or pharyngeal abnormalities, obtain a nocturnal bi-level device therapy, and avoid evening sedatives, alcohol consumption, and operation of a motor vehicle until the disorder could be corrected (Tr. 404).

Plaintiff returned to BRH in June, 2012, complaining about a right foot injury and pain

12

on weight bearing (Tr. 295-98).  Plaintiff walked with a limping gait, was unable to bear weight, and exhibited soft-tissue tenderness of the foot and ankle and severe tenderness of the plantar aspect of the right foot, but the arch of his foot was intact distally with respect to his neurovascular system and he exhibited no erythema, swelling, abrasion or ecchymosis, infection, injury, or sensory deficit or weakness (Tr. 295).  X-rays of the foot showed mild retro calcaneal spur formation but were otherwise negative (Tr. 298).  Reports from Allcare Rehabilitation Inc. that month indicated that Plaintiff was unable to perform his activities of daily living without pain or assistance (Tr. 306).  The notes indicated that Plaintiff demonstrated impaired balance due to lower extremity weakness and low back pain, required modifications with reaching and lifting activities, had an antalgic gait and fair endurance, and could ambulate independently without an assistive device (Tr. 306).

Plaintiff reported to Dr. Thomas DiGeronimo later that month complaining of chronic neck and back pain with radiation into the bilateral upper and lower extremities with numbness and tingling of the upper and lower extremities (Tr. 318-20).  Plaintiff reported no other complaints, including anything related to his respiratory or cardiac systems (Tr. 319).  Upon examination, Plaintiff demonstrated some decreased range of motion in the neck, back, and lower extremities, 3/5 strength in the upper and lower extremities, decreased sensation in the bilateral upper and lower extremities, and an ataxic gait but also demonstrated negative Tinel's sign, negative Phalen's sign, negative Romberg sign, no lateralization of the lower extremities, symmetrical reflexes, and no tremor or abnormality with regard to coordination (Tr. 319).  Dr. DiGeronimo diagnosed Plaintiff with chronic back pain, chronic neck pain, cervical

radiculopathy, lumbar radiculopathy, muscle spasms, degenerative disc disease, and leg pain and ordered an MRI of the cervical spine, ordered an ultrasound of the lower extremities, and prescribed Plaintiff medication (Tr. 319-20). In accordance with Dr. DiGeronimo's order, a MRI of the cervical spine the following month indicated that Plaintiff experienced multilevel degenerative disc disease without spinal canal stenosis (Tr. 312-13).

Plaintiff also reported to Dr. Jonathan Axel from March to June, 2012, for respiratory problems (Tr. 381-419, 425-29, 441-91). Dr. Axel diagnosed Plaintiff with shortness of breath, COPD, obstructive sleep apnea, and chronic bronchitis (Tr. 384, 389, 394, 400, 461). Upon examination, Dr. Axel noted that Plaintiff exhibited bilateral edema and mucoid in his internal nose and redundant mucosa and prominent tongue in his oropharynx and demonstrated hyperresonant respiratory percussion, diffuse auscultation, diminished rhonchi expiratory wheezes, and prolonged expiratory phase and, on one occasion, inflamed right and left external canals of the ears (Tr. 383, 388, 393, 399, 459-60). A pulmonary function study performed in April, 2012, demonstrated that Plaintiff had small airways disease with borderline large airflow obstruction with reduced FEV1 and FVC but normal FEV1 ratio, reduced peak flow, and no significant improvement post-bronchodilators (Tr. 415-17). Notwithstanding, the study also revealed Plaintiff's lung volume demonstrated normal lung capacity, FRC, and residual volume and RV/TLC ratio and some improvement in air trapping (Tr. 415). The study further demonstrated Plaintiff's diffusion capacity was normal, airways resistance was elevated and improved or decreased post-bronchodilator, flow volume loop revealed nonspecific obstructive pattern, and normal room air pulse oximetry (Tr. 415).

Beyond those findings, Dr. Axel reported normal findings upon examination of Plaintiff's ear, nose, throat, neck, and respiratory, cardiovascular, and lymphatic systems (Tr. 383, 388, 393, 399, 460-61). Indeed, chest X-rays in April, 2012, indicated no evidence of acute cardiopulmonary disease (Tr. 402). Although Plaintiff saw Dr. Axel primarily for respiratory problems, Dr. Axel further noted in June, 2012, that Plaintiff demonstrated overall normal strength and normal tone in his extremities with a normal gait, normal station, trace edema in his lower extremities, and no neurological or psychiatric issues (Tr. 383-84, 388). Furthermore, as the ALJ mentioned, in June, 2012, Dr. Axel noted that Plaintiff reported that he lived alone, arrived alone to his appointment, and performed heavy chores (Tr. 381).

After that, Plaintiff continued to follow up at SCHC from July through October 2012 (Tr. 497-505). In July, 2012, Plaintiff sought a referral for a plastic surgeon for a skin condition and denied upper respiratory symptoms or any musculoskeletal complaints (Tr. 504-05). The following month, Plaintiff appeared for a physical and demonstrated no abnormal findings (Tr. 501-03). Plaintiff returned to SCHC in October, 2012, for a follow-up appointment, during which he denied chest pain or shortness of breath but reported swelling in his legs bilaterally (Tr. 498). Upon examination, Plaintiff demonstrated no abnormal findings (Tr. 498-99).

In rendering the RFC, the ALJ thoroughly discussed the foregoing medical records (Tr. 19-23). As set forth above, and as discussed in the ALJ's decision, the medical records do not support Plaintiff's allegations of disabling limitations. As the ALJ noted, although the medical records demonstrated that Plaintiff experienced several severe and non-severe impairments, including respiratory and musculoskeletal impairments, those impairments did not limit Plaintiff's

ability to perform a reduced range of light work.  Indeed, "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 Fed. App'x 569, 572 (11th Cir. 2005).  The severity of a medically ascertained impairment is therefore not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Accordingly, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  In this instance, the ALJ appropriately considered the medical records documenting Plaintiff's impairments and the associated limitations in determining Plaintiff's RFC and correctly determined that those impairments did not prohibit Plaintiff from performing a reduced range of light work.

In conjunction with the medical opinions and the medical records, the ALJ also considered Plaintiff's daily activities in determining that Plaintiff maintained the ability to perform a reduced range of light work (Tr. 21-22).  In evaluating and discrediting a claimant's complaints, the ALJ may consider the claimant's daily activities.  20 C.F.R. § 404.1529(c)(3)(i); *Conner v. Astrue*, 415 Fed. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints" (citation omitted)); *see Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (considering the ability to perform such tasks as dialing a phone, writing, opening a door, buttoning, and unbuttoning in finding that a plaintiff retained the ability to perform sedentary work); *but see Lewis v. Callahan*, 125 F.3d 1436, 1441

16

(11th Cir. 1997) (stating "[n]or do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians."). Although participation in everyday activities of short duration, such as housework, will not necessarily disqualify a claimant from disability, an ALJ is not precluded from considering a claimant's daily activities at all in determining credibility. *Hoffman v. Astrue*, 259 Fed. App'x 213, 219 (11th Cir. 2007) (*per curiam*). Here, the ALJ correctly noted that Plaintiff drove short distances, dressed himself with pullover shirts, shopped with his sister, and handled his laundry (Tr. 21-22). Further, one month after the alleged disability onset date, Plaintiff reported no recent limitation regarding his performance of his activities of daily living and no recent alteration in his activities of daily living that required assistance (Tr. 236). In addition, as noted above, in June, 2012, Dr. Axel noted that Plaintiff lived alone, arrived alone to his appointment, and performed heavy chores (Tr. 381). The ALJ appropriately considered such activities in determining that Plaintiff maintained an ability to perform a reduced range of light work.

Furthermore, in determining Plaintiff's RFC, the ALJ noted that Plaintiff discontinued working in February, 2010, only after his employer closed, rather than due to any medical impairments (Tr. 21, 241). In addition, the ALJ noted that Plaintiff subsequently received unemployment benefits, which required Plaintiff to assert that he was capable of working (Tr. 21).[3] As the ALJ stated, each of those facts lend support for the finding that Plaintiff maintained

---

[3] Courts have determined that an ALJ may consider a claimant's application for and receipt of unemployment compensation in making a credibility determination. *See Witherspoon v. Colvin*, No. CA 12-0220-C, 2013 WL 1154319, at *18 n.13 (S.D. Ala. Mar.

the ability to perform work-related activities and that Plaintiff's asserted limitations were not as severe as alleged.

Plaintiff fails to point to any evidence of record which supports a more restricted RFC than the RFC identified by the ALJ. Instead, the evidence of record supports the ALJ's RFC determination. For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

**IV.**

Accordingly, it is

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close

---

19, 2013); *George v. Astrue*, No. CV-11-S-3518-M, 2012 WL 3030157, at *1-5 (N.D. Ala. July 20, 2012); *Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, at *6-7 (M.D. Fla. Mar. 31, 2011). Though not dispositive of a claimant's ability to work, the application and receipt of unemployment benefits demonstrates inconsistencies in a claimant's representations to various agencies and further demonstrates a claimant's willingness and ability to work. *See George*, 2012 WL 3030157, at *1-5 ("This court understands that claimant may have had valid, even compelling, personal reasons for applying for unemployment compensation and Social Security disability benefits at the same time. But the ALJ nonetheless was entitled to consider the inconsistencies in claimant's representations to various agencies in evaluating claimant's credibility."); *Boyd*, 2011 WL 1259795, at *7 ("[W]hen viewed in context, it is apparent the ALJ was supporting his credibility determination by referencing the inconsistent positions of Plaintiff applying for unemployment compensation and Plaintiff's claim for disability insurance benefits" (citation omitted)); *Willimon v. Astrue*, No. 3:08-cv-1235-J-JRK, 2010 WL 1252152, at *4 (M.D. Fla. Mar. 26, 2010) ("Rather, it appears the ALJ was only pointing out the inconsistency between collecting unemployment benefits while claiming to be as limited as Plaintiff alleges. When it was necessary to report that he was able to work for the purpose of obtaining unemployment benefits, Plaintiff so reported; now that Plaintiff is seeking disability benefits, he is reporting that he is unable to work. These positions are inconsistent." (internal citation omitted)).

the case.

IT IS SO REPORTED in Tampa, Florida, on this 29th day of December, 2015.

*[signature]*

ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

cc:    Hon. James S. Moody, Jr.
       Counsel of Record